# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| GLORIA HALCOMB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil Action No. 01-1428** |
| ) | **(RBW)** |
| ) | |
| OFFICE OF THE SENATE SERGEANT- ) | |
| AT-ARMS of the UNITED STATES ) | |
| SENATE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OPINION

Gloria Halcomb brought this lawsuit, pro se, against the Office of the Sergeant-at-Arms

of the United States Senate ("Sergeant-at-Arms") under the Congressional Accountability Act

("CAA" or "Act"), 2 U.S.C. §§ 1301-1438 (2000), asserting race and sex discrimination, and

retaliation.[1]  Amended Verified Complaint ("Am. Compl.") ¶ 1.  The defendant has moved to

dismiss this case pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that

the Court lacks subject-matter jurisdiction, or, alternatively, for summary judgment pursuant to

---

[1] In her opposition to the defendant's dismissal motion, the plaintiff contends that she was also subjected to a hostile work environment.  She initially raised this claim on January 23, 2004, in her amended administrative complaint.  As the Court concluded in Halcomb v. Office of the Sergeant-at-Arms of the U.S. Senate, No. 01-1428, 2007 WL 2071684, at *3 (D.D.C. July 13, 2007), it lacks jurisdiction over the hostile-work-environment claim because this claim was first filed by the plaintiff with the Office of Compliance.  See also Delfani v. U.S. Capitol Guide Bd., No. 03-0949, 2005 WL 736644, at *4-5 (D.D.C. March 31, 2005) (dismissing a plaintiff's claim for lack of jurisdiction because her elected forum was initially the Office of Compliance).

Rule 56(c) of the Federal Rules of Civil Procedure, and the plaintiff has opposed these motions.[2] For the following reasons, the defendant's motion to dismiss is denied but its motion for summary judgment is granted.

## I.  Factual Background

The plaintiff is an African-American female. Am. Compl. ¶ 4.  Between July 1986 and May 2003, she was employed as a media coordinator by the United States Senate's Radio and Television Gallery.  Am. Compl. ¶ 6; Plaintiff's Motion and Answer to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") at 12-13.  During her period of employment, Lawrence Janezich was the plaintiff's immediate supervisor.  Am. Compl. ¶ 8.  The plaintiff contends that during her employment, the Sergeant-at-Arms and Mr. Janezich subjected her to continuous race and gender discrimination, and eventually, to retaliation.  Id. ¶ 5.  The plaintiff's allegations against the Sergeants-at-Arms are premised on the notion that they countenanced Mr. Janezich's alleged discriminatory acts and retaliation against her.  Id.  ¶¶ 8-17.

As to her claim for discrimination, the plaintiff alleges that her salary was "kept lower than the other [Senate] media coordinators," id. ¶ 9, that Mr. Janezich prevented her from earning larger bonuses, id. ¶ 11, that he treated his female subordinates inappropriately, id. ¶ 10, and that he repeatedly denied her opportunities for advancement, while employing and promoting less-qualified white males, id. ¶ 12.  Presumably, in regards to these alleged acts of discrimination, in

---

[2] The defendant made an anticipatory counter-argument, asserting that the Court should not consider any cross-motion for summary judgment filed by the plaintiff, apparently assuming that the plaintiff would file such a motion.  However, no such motion was filed.  Consequently, the Court is foreclosed from considering the defendant's counter-argument because it is not ripe. See ResQNET.Com, Inc. v. Lansa Inc., 382 F. Supp. 2d 424, 436 n.8 (S.D.N.Y. 2005) (declining to address an issue because it was not ripe, the issue having not been developed or briefed).

October 2000, the plaintiff sought counseling from the Senate's Office of Compliance, as required by the CAA, claiming she had been subjected to racial and gender discrimination.  Id. ¶ 14.  Both the counseling and the subsequent mediation proved unsuccessful.  Id.

The plaintiff contends that after she "initiated proceedings regarding unlawful discrimination" under the CAA,  Mr. Janezich, with the support of his superiors in the Office of the Sergeant-at-Arms, began to engage in acts of reprisal and retaliation.  Id. ¶ 21.  Specifically, the plaintiff claims that Mr. Janezich "tightened [his] supervision of [the p]laintiff to a level not imposed on other employees . . . ."  Id. ¶ 17.  She also contends, inter alia, that her alleged mistreatment, including her inability to receive promotions after she filed her administrative complaints against the Sergeant-at-Arms and Mr. Janezich, amounted to retaliation.  Id. ¶ 18.

## II.  Procedural History

On June 27, 2001, the plaintiff filed her initial complaint in this Court against the defendant.  In that complaint, the plaintiff alleged race and gender discrimination, and retaliation. On June 3, 2002, this Court dismissed without prejudice the retaliation claim because the plaintiff had not exhausted her administrative remedies as to that claim.  Specifically, before filing this lawsuit, she had not, as required by the CAA, participated in counseling and mediation concerning the retaliation claim.  See Halcomb v. Office of the Senate Sergeant-at-Arms of the U.S. Senate, 209 F. Supp. 2d 175, 178-79 (D.D.C. 2002).  After participating in the required counseling and mediation of the retaliation claim, the plaintiff moved to amend her complaint to again assert the retaliation claim.  Motion for Leave to file Amended Complaint.[3]  On May 21,

_____

[3] The plaintiff attached a letter from the Office of Compliance to her Amended Complaint.  That letter, dated June 25, 2002, confirmed that the plaintiff completed counseling on April 11, 2002, and

(continued...)

3

2003, while the motion to amend the complaint was pending, the Sergeant-at-Arms terminated the plaintiff's employment.  Defendant's Opposition to Plaintiff's Motion for Leave for Time at 2.  The Court subsequently granted the plaintiff's motion to amend the complaint, and the plaintiff filed her amended complaint on June 19, 2003.  On December 3, 2004, the defendant filed its Rule 12(b)(1) motion, asserting that this Court lacks subject-matter jurisdiction, and, in the alternative, moved for summary judgment under Rule 56(c).  Defendant's Motion to Dismiss and/or for Summary Judgment ("Def.'s Mot.").

In its motion, the defendant argues that this Court lacks subject-matter jurisdiction over the plaintiff's discrimination claim because she is challenging acts that either occurred prior to the effective date of the CAA or that did not occur within the 180-day period preceding the plaintiff's October 25, 2000, request for counseling.   Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and/or for Summary Judgment ("Def.'s Mem.") at 2.  And, as to the plaintiff's retaliation claim, the defendant argues that the court lacks jurisdiction because the acts underlying this claim did not occur within 180 days of the plaintiff's March 11, 2002, request for counseling.  Def.'s Mem. at 5-6, 8, 10.  Alternatively, the defendant asserts that it is entitled to summary judgment because the plaintiff has failed to establish a prima facie case of race or gender discrimination, or of retaliation.  Def.'s Mem. at 2, 15.

The plaintiff opposes the defendant's timeliness challenge to her discrimination claim, asserting that the discriminatory acts she alleged were "serial and discrete."  Pl.'s Opp'n at 4.   In other words, she contends that because she "has timely raised a prohibited act [,either

---

[3](...continued)
completed mediation on June 24, 2002, as required by 2 U.S.C. § 1408(a).  Am. Compl., Exhibit B at 1.

discrimination or retaliation,]" the "whole serial claim is actionable" even though certain parts of

the act were inside and other parts were outside of the "limitations period." Id. Consequently,

the plaintiff disputes the notion that this Court lacks subject-matter jurisdiction over her claims.

Id. Furthermore, the plaintiff asserts that she has established a prima facie case as to both her

claims for discrimination and retaliation. Pl.'s Opp'n. at 21.

### III. Discussion

#### A.  Standards of Review

##### 1.  Rule 12(b)(1)

To avoid dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a

plaintiff must establish the Court's jurisdiction by a preponderance of the evidence. Moore v.

Bush, 535 F. Supp. 2d 46, 47 (D.D.C. 2008); see also McNutt v. Gen. Motors Acceptance Corp.,

298 U.S. 178, 189 (1936) (noting that jurisdictional facts must be supported by "competent

proof" or justified by a "preponderance of evidence"). When determining the question of

jurisdiction, federal courts accept the factual allegations contained in the complaint as true.

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164

(1993). Additionally, pro se complaints must be construed liberally. See Haines v. Kerner, 404

U.S. 519, 520-21 (1972) (holding that allegations in pro se complaints are held to less stringent

standards than formal pleadings drafted by lawyers); see, e.g., Dixon v. Maryland, 261 F.Supp.

746, 747 (D. Md. 1966) (liberally construing a complaint, alleging a 18 U.S.C. § 242 infraction,

as asserting a 42 U.S.C. § 1983 claim, because the plaintiff could not pursue a civil claim under

18 U.S.C. § 242). Moreover, the Court can consider material outside of the pleadings when

determining whether it has jurisdiction. EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d

621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C.

Cir. 1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); accord Grand Lodge of

Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d  9, 14 (D.D.C. 2001).

      2.  Rule  56(c)

      Summary judgment is appropriate when there is "no genuine issue as to any material fact

and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A

material fact is one that is capable of affecting the outcome of the litigation, and a genuine issue

of material fact exists if "a reasonable jury could return a verdict for the nonmoving party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary

judgment may not rely solely on conclusory allegations but must set forth facts that are

significantly probative.  Id. at 249-50 (citations omitted).  "Credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge . . . ."  Id. at 255.  Thus, when considering a motion for summary

judgment, a court must "view the evidence in the light most favorable to the nonmoving party

and draw all reasonable inferences in [her] favor."  Galvin v. Eli Lilly & Co., 488 F.3d 1026,

1031 (D.C. Cir. 2007) (internal quotation and citation omitted); see also Greene v. Amritsar Auto

Servs. Co., 206 F. Supp. 2d 4, 7 (D.D.C. 2002).

      Entering summary judgment is appropriate after there has been "adequate time for

discovery . . .  [and the] party [against whom the motion has been filed] fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

To survive a motion for summary judgment in a case of this type, a plaintiff must show that a

reasonable jury could conclude from all of the evidence that there was an adverse employment

action, and that the action was taken for a discriminatory or retaliatory reason.  Lathram v. Snow,

336 F.3d 1085, 1088 (D.C. Cir. 2003) (citing Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1290

(D.C. Cir. 1998) (en banc)).

### B.  Analysis

1.  The Defendant's Dismissal Motion

The defendant makes three arguments in support of its position that the Court lacks

subject-matter jurisdiction in this case.  First, the Sergeant-at-Arms argues that the plaintiff has

pled alleged discriminatory acts that occurred before the CAA became law.[4]  Def.'s Mem. at 6-7.

The defendant contends that those claims were cognizable only under the now-repealed

Government Employees' Rights Act of 1991 ("GERA"), formerly 2 U.S.C. §§ 1201-1223

(repealed by the CAA), which provided aggrieved Senate employees with an exclusive

administrative means of redress and judicial review in the United States Court of Appeals for the

Federal Circuit.[5]  Id.   Accordingly, the defendant claims that plaintiff's pre-CAA allegations are

---

[4] The defendant asserts that the hiring of the two Third Assistants in 1990 and 1994 occurred before enactment of the CAA.  Thus, the defendant contends that those alleged discriminatory acts are not actionable under 2 U.S.C. § 1435(a).  Def.'s Mem. at 6.

[5] The CAA, pursuant to 2 U.S.C. § 1435(a), provides that "[i]f, as of the date on which section 201 [2 U.S.C. § 1311] takes effect [, January 23, 1996], an employee of the Senate . . . has or could have requested counseling under section 305 of the Government Employees Rights Act of 1991 [formerly 2 U.S.C. § 1205 ] . . . the employee may complete, or initiate and complete, all procedures under the Government Employees Rights Act of 1991. . . and the provisions of that Act . . . shall remain in effect with respect to, and provide the exclusive procedure for, those claims until the completion of such procedures."

The GERA required that "[a]ll personnel actions affecting employees of the Senate . . . be . . . free from any discrimination based on . . . race, color, religion, sex, . . . national origin[,] . . . age[,] . . . handicap or disability." 2 U.S.C. § 1202 (1994) (transferred to 42 U.S.C. § 2000e-16).  It established the Office of Senate Fair Employment Practices and empowered it to "administer the [four-step

(continued...)

barred by the doctrine of sovereign immunity, and that this Court therefore lacks subject-matter

jurisdiction over them.  Def.'s Mem. at 7.

Second, the Sergeant-at-Arms asserts that the plaintiff has pled alleged acts of

discrimination and retaliation that occurred outside of the 180-day period allotted for challenging

such acts under the CAA.[6]  Def.'s Mem. at 8-10.  Specifically, Section 1402(a) of Title 2 of the

U.S. Code requires that claims be filed "not later than 180 days after the date of the alleged

violation."  2 U.S.C. § 1402(a).   Consequently, the defendant argues that the Court is foreclosed

from considering any acts of discrimination that allegedly occurred more than 180 days before or

any time after October 25, 2000, the date on which the plaintiff requested counseling concerning

the alleged discriminatory acts.  Def.'s Mem. at 9.  The defendant makes the same argument in

regards to the plaintiff's retaliation claim.  Def.'s Mem. at 10.  Thus, the defendant argues the

plaintiff is precluded from asserting any retaliation violations that occurred more than 180 days

prior to May 11, 2002, the date on which the plaintiff requested counseling.  Id.

The plaintiff responds to the defendant's first two jurisdictional challenges arguing that

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), supports her position that this Court

---

[5](...continued)
administrative] process" set forth in the statute. Id. § 1203(a)(1) (repealed 1995); see id. § 1204
(repealed 1995) (delineating the four-step Senate procedure for consideration of alleged violations).
Aggrieved Senate employees and Members of the Senate also had a right of review by the United States
Court of Appeals for the Federal Circuit. Id. § 1209(a) (repealed 1995).

[6] Specifically, the defendant's argument relates to the plaintiff's allegations that: (1) the
defendant hired a white-male Third Assistant in 1990 and another in 1994; (2) the defendant hired
another white male as the Senior Media Relation's Coordinator in 2001; (3) she received low
performance ratings in March 2000, May 2001, and March 2002; (4) she was required to submit a
doctor's note when she was absent from work on February 5, 2001; (5) the defendant gave her a
memorandum accusing her of failing to follow her supervisor's instructions; and (6) she was denied merit
increases after she filed this lawsuit in 2001.  Def.'s Mem. at 8-10.

has jurisdiction to entertain claims involving alleged violations that occurred prior to 1996, the year in which the CAA was enacted, together with claims that occurred after the CAA's effective date, when the alleged discriminatory conduct is "serial in nature." Pl.'s Opp'n at 4.

Third, the defendant contends that the Court lacks subject-matter jurisdiction over the plaintiff's retaliation claim because the plaintiff filed her amended complaint, which renewed the retaliation claim that had been dismissed earlier, outside of the 90-day period prescribed by the CAA. Def.'s Mem. at 25. The plaintiff's response to the defendant's third contention is somewhat unclear. She seems to suggest, however, that the Court has jurisdiction over her retaliation claim based on principles of equitable tolling. Pl.'s Opp'n at 5.

The Court agrees that the plaintiff's allegations as to acts that occurred prior to the CAA's enactment and outside of the 180-day statutory period are not actionable. However, because the plaintiff also pleads acts that occurred after the CAA went into effect and the process for initiating these claims under the Act were commenced within the time period required by the CAA, the Court does have jurisdiction to entertain these claims. Furthermore, for reasons discussed later, the Court finds that the plaintiff may use her non-actionable claims as evidentiary background support for her properly filed claims.

a. The Plaintiff's Discrimination Claim

The plaintiff contends that she was the victim of "continuing race and sex discrimination." Am. Compl. ¶ 19. In support of this position, the plaintiff asserts long-standing acts of racial and gender discrimination that supposedly occurred over the course of her employment. Id. ¶¶ 9-19. Among the various alleged discriminatory acts she contends were part of this long-standing pattern were the 1990 and 1994 employment of several white-male Third

Assistants, who the plaintiff contends were less qualified than she was, and the other five allegations set forth in footnote 6, supra.  Am. Compl. ¶ 12.

Under the CAA there is "a three-step process by which an aggrieved employee may seek redress for perceived employment discrimination for which the sovereign immunity of the United States is waived."  Delfani v. U.S. Capitol Guide Bd, No. 03-0949, 2005 WL 736644, at *3 (D.D.C. Mar. 31, 2005) (citing 2 U.S.C. § 1401).  First, an employee must exhaust her administrative remedies, which consist of participating in counseling and mediation, prior to initiating a civil or administrative action.  2 U.S.C. § 1408(a); Halcomb, 209 F. Supp. 2d 175, 178-79 (holding that the Court lacked subject-matter jurisdiction under the CAA because the plaintiff had failed to complete counseling and mediation as required before initiating a CAA civil action).  Here, counseling was completed on November 24, 2000, and mediation concluded on March 30, 2001. Verified Complaint ("Compl.") ¶ 2.  Second, an employee must decide whether she wishes to seek redress though a civil action in federal district court or administratively through the Office of Compliance.  2 U.S.C. § 1404.  And, Ms. Halcomb chose this forum rather than the administrative process to pursue her discrimination claim.  Id.  Finally, an employee is required to file a complaint with her chosen forum – the Office of Compliance or a federal district court – within 30 to 90 days after receiving notice that mediation has been terminated.  2 U.S.C. § 1404.  The plaintiff filed this action on June 27, 2001, thereby complying with the third requirement for pursuing a CAA claim.  Id.  The plaintiff has therefore fully complied with the requirements for filing CAA claims against a component of the United States Senate and her timely filed claims are not barred by the doctrine of sovereign immunity. Moreover, the plaintiff may use incidents that allegedly occurred prior to the adoption of the

CAA and outside the time period allowed under the CAA to start the process for initiating claims

under the Act as evidentiary background support for her actionable claims.  See Nat'l R.R.

Passenger Corp., 536 U.S. at 113 (although "discrete discriminatory acts are not actionable if

time barred," this proscription does not "bar an employee from using their prior acts as

background evidence in support of a timely claim").  Thus, the Court rejects the defendant's

argument that it lacks jurisdiction to entertain plaintiff's lawsuit in its entirety because certain

alleged discriminatory acts complained of occurred before the CAA became law or outside of the

authorized filing period.

### b.  The Plaintiff's Retaliation Claim

The defendant argues that the Court is precluded from addressing the plaintiff's

retaliation claim because she filed her amended complaint outside of the 90-day period

prescribed by the CAA.  Def.'s Mem. at 25.  As support for its position, the defendant observes

that under the CAA "a covered employee who seeks a judicial remedy in federal court must file a

civil action '[n]ot later than 90 days after [the] covered employee receives notice of the end of

the period of mediation, but no sooner than 30 days after receipt of such notification'"  Id.

(quoting 2 U.S.C. § 1404).

The plaintiff received notification from the Office of Compliance on July 10, 2002, that

her mediation had been completed.  Def.'s Mem. at 25-26.[7]  Thus, the plaintiff was required to

file her complaint at some point between August 9, 2002 and October 8, 2002, and she filed a

---

[7] The plaintiff also attached a letter to her complaint from the Office of Compliance dated June 25, 2002, which confirmed that she completed counseling and mediation of her retaliation claims, as required by 2 U.S.C. § 1408(a) (2000).  Am. Compl., Ex. B at 1.  Specifically, the letter states that the plaintiff completed counseling on April 11, 2002, and completed mediation on June 24, 2002.  Id.

motion to amend her initial complaint on September 24, 2002.  However, the Court did not rule

on plaintiff's motion until June 19, 2003.  Thus, if it is the actual filing of the amended complaint

and not the request to do so that satisfies the 90-day filing requirement of § 1404, it was the

Court's delay in ruling on the motion to file the amended complaint that caused the non-

compliance.  "[T]he Court cannot allow its own delay in ruling upon [a] motion . . . due to . . . a

congested calendar [to] accrue to the detriment of [a] plaintiff."  Kendrick v. Am. Bakery Co.,

No. 11490, 1968 WL 137, at *1 (N.D. Ga. July 29, 1968).  Accordingly, the plaintiff's retaliation

claim is not time-barred since she sought to file the amended complaint, which included the

revived retaliation claim, within the time prescribed by the CAA.  Consequently, the Court has

the jurisdiction to entertain it.

2.   The Defendant's Summary Judgment Motion

a.   The Plaintiff's Discrimination Claim

The Office of the Sergeant-at-Arms claims that it is entitled to summary judgment on the

first count of the amended complaint because the plaintiff has failed to establish a prima facie

case of race or gender discrimination.  Def.'s Mem. at 14.  The Court agrees for the reasons that

follow.

Under the CAA, Senate employees are to be free from any discrimination based on race

or gender.   2 U.S.C. §§ 1301(3)(B), 1311(a)(1).  When summary judgment is sought by a

defendant on a discrimination claim filed under the CAA, the Court is required to assess the

challenge utilizing the test announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973).  See Fields v. Office of Johnson, 459 F.3d 1, 15 n.24 (D.C. Cir. 2006) ("[The plaintiff]

alleges racial and gender discrimination in violation of 2 U.S.C. § 1311, which incorporates §

12

703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, to which the <u>McDonnell Douglas</u>

framework applies . . . .").  Under <u>McDonnell Douglas</u>, a plaintiff has the initial burden of

proving a <u>prima</u> <u>facie</u> case of discrimination by a preponderance of the evidence.  <u>McDonnell</u>

<u>Douglas</u>, 411 U.S. at 802.   Once the plaintiff has established a <u>prima</u> <u>facie</u> case, the burden then

shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the [the

defendant's actions]."  <u>Id.</u>  If such an explanation is provided, the plaintiff then shoulders the

burden of showing that the legitimate, nondiscriminatory reason offered by the defendant was a

mere pretext for discrimination.  <u>Id.</u> at 804.

To establish a <u>prima</u> <u>facie</u> case in the absence of direct evidence of discrimination, a

plaintiff must show "that: '(1) she is a member of a protected class; (2) she suffered an adverse

employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'"

<u>Stella v. Mineta</u>, 284 F.3d 135, 145 (D.C. Cir. 2002) (quoting <u>Brown v. Brody</u>, 199 F.3d 446,

452 (D.C. Cir. 1999)).  In this case, the plaintiff has satisfied the first element of her <u>prima</u> <u>facie</u>

case – that she is a member of a protected class.  The defendant argues, however, that the

plaintiff has failed to establish either or both the second element of a <u>prima</u> <u>facie</u> case – an

adverse employment action,  Def.'s Mem. at 16, and the third element – rebuttal of its legitimate,

non-discriminatory reasons for taking the actions challenged by the plaintiff, <u>id.</u> at 14.

An adverse employment action is defined as any "tangible employment action [that]

constitutes a significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant

change in benefits."  <u>Brown</u>, 199 F.3d at 456.  In other words, "[a]n 'employment decision does

not rise to the level of an actionable adverse action . . . unless there is a tangible change in the

duties or working conditions constituting a material employment disadvantage.'" Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (quoting Walker v. WMATA, 102 F. Supp. 2d 24, 29 (D.D.C. 2000)).  Thus, adverse employment actions do not include "'[p]urely subjective injuries,' such as dissatisfaction with reassignment, public humiliation, or loss of reputation." Nichols v. Truscott, 424 F. Supp. 2d 124, 136 (D.D.C. 2006) (quoting Holcomb v. Powell, 433 F.3d 889, 902 (D.C. Cir. 2006)); accord Ginger v. District of Columbia, __ F.3d __, No. 07-7054, 2008 WL 2342327, at *3 (D.C. Cir. June 10, 2008) (noting that dissatisfaction with reassignment alone is a "purely subjective injur[y]," but coupled with "significantly different responsibilities or significant change in benefits generally indicates an adverse action" (citation omitted)).

The plaintiff argues that the following alleged events amounted to adverse employment actions: (1) being paid less than other media coordinators; (2) being asked to do the "most low profile tasks so as to decrease her chances for advancement;" (3) receiving low-performance ratings, which disqualified her for bonuses; (4) filling vacant positions with less-qualified, white males in 1990, 1994, and 2001; (5) promoting Michael Mastrian – a white male – to her same position and pay level even though she was senior to him; (6) repeatedly failing to select her for promotions; (7) subjecting her to increased supervision; and (8) using sick-leave policy disparately against her.  Pl.'s Opp'n at 6-7; see also Am. Compl. ¶¶ 9-19.  The Court cannot agree that all of these allegations are adverse employment actions.

The plaintiff contends that her salary was maintained at a lower level than the other media coordinators.  However, in Brown, the Circuit Court held that a plaintiff who

suffers no diminution in pay or benefits [] does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions,

or privileges of her employment or her future employment opportunities such that a
reasonable trier of fact could conclude that the plaintiff has suffered objectively
tangible harm.

199 F.3d at 457.  And, the plaintiff has failed to offer any evidence to show that white male

employees, or males in general, who also had marginal job performance ratings were paid higher

salaries.  See George Washington Univ. v. Violand, 940 A.2d 965, 979 (D.C. 2008) (in order to

recover for pay discrimination a plaintiff must establish "that the employer pays different wages

to employees of opposite sexes [or race] for equal work on jobs the performance of which

requires equal skill, effort, and responsibility, and which are performed under similar working

conditions") (internal quotation marks and citation omitted).  Furthermore the defendant

presented evidence to support its contention that pay increases or merit increases were "tied

directly to Gallery employees' annual performance reviews."  Def.'s Reply at 17.  The plaintiff's

performance ratings for the time period in dispute were mediocre, and the plaintiff's salary was

therefore not increased, nor was it decreased.  Id. at 16,18.  Thus, even if the plaintiff could show

that her salary was suppressed and that this amounted to an adverse employment action, the

legitimate, non-discriminatory reason proffered by the defendant returned the burden to the

plaintiff to show that the reason offered was actually a pretext for discrimination.  See Corning

Glassworks v. Brennan, 417 U.S. 188, 195-96 (1974) (employers may defend against a claim of

discriminatory pay differential by showing that such payment is made pursuant to "a merit

system; [] a system which measures earnings by quantity or quality of production; or [] a

differential based on any other factor other than sex").  The plaintiff has failed to satisfy this

burden.

Being required to perform "low profile" tasks also fails to amount to an adverse employment action.  Courts have consistently held that "a claim of an undesirable assignment, without any effect on salary, benefits, or grade, is similar to claims regarding lateral transfers, and thus does not constitute an adverse action." Blackmon-Malloy v. U.S. Capitol Police Bd., 338 F. Supp. 2d 97, 106 (D.D.C. 2004) (citing Crenshaw v. Georgetown Univ., 23 F. Supp. 2d 11, 18 (D.D.C. 1998), aff'd, 194 F.3d 173 (D.C. Cir. 1999)).  And, a different conclusion is not called for by recent Circuit authority that has defined adverse employment actions as "'materially adverse consequences affecting the terms, conditions, or privileges of [the plaintiff's] employment … such that a reasonable trier of fact could find objectively tangible harm.'" Ginger, __ F.3d __, 2008 WL 2342327, at *3 (quoting Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002)) (alteration in original).  Further, "'purely subjective injuries, such as dissatisfaction with a reassignment are not adverse actions.'" Id.  (quoting Forkkio, 306 F.3d at 1130) (alteration omitted).  For reassignment (or assignment of different duties) to rise to the level of an adverse action, it must be coupled with "'significantly different responsibilities'" or "'a significant change in benefits.'" Id. (quoting Forkkio, 306 F.3d at 1131).

Additionally, the plaintiff's complaints about low-performance ratings and increased supervision fail to support the requirements for a prima facie case because she has failed to demonstrate that these events substantively impacted the conditions of her employment. See Stewart, 275 F.3d at 1136 ("formal criticisms or reprimands, without additional disciplinary action such as a change in grade, salary, or other benefits do not constitute adverse employment actions"); see also Hussain v. Principi, 344 F. Supp. 2d 86, 106 (D.D.C. 2004) ("Even performance evaluations that are unequivocally negative" need not be adverse employment

actions, especially where such evaluations have not "affected [the] plaintiff's conditions of employment." (citing Brown, 199 F.3d at 458)).  Ms. Halcomb asserts that her low performance ratings were responsible for her failure to receive merit-based pay bonuses.  If true, this assertion could constitute an adverse employment action.  See Weber v. Battista, 494 F.3d 179, 185 (D.C. Cir. 2007) (holding that a low performance rating which caused a person to be precluded from receiving a bonus can constitute an adverse action).  However, the defendant offers a legitimate, non-discriminatory reason for its actions, i.e., Mr. Janezich's (the plaintiff's supervisor) sworn statement that the plaintiff received low performance ratings due to her need to improve her written communication and organizational skills.  Defendant's Memorandum of Point and Authorities in Opposition to Plaintiff's Combined Application for Temporary Restraining Order and Preliminary Injunction, Exhibit B, Tab 1 (Declaration of Lawrence Janezich) ("Janezich Decl.") at 2.  Ms. Halcomb has consistently failed to rebut this explanation proffered by the defendant as the reasons for its actions, and thus she has not demonstrated that these reasons were pretextual and that the true motivation for the defendant's  actions was the prohibited discrimination.  See McDonnell Douglas, 411 U.S. at 804.  Therefore, the plaintiff cannot prevail on this claim either.

The  plaintiff's dissatisfaction with Mr. Mastrian's promotion to the same position and pay grade as hers also does not constitute an adverse action.  Cf. Nichols, 424 F. Supp. 2d at 136 (regarding dissatisfaction with reassignment as a "purely subjective injur[y]").  At any rate, even

if it did constitute an adverse action, the claim is time-barred because the event occurred in 1997.[8]

Finally, the plaintiff's allegations that she was subjected to increased supervision and that application of the sick-leave policy was used against her in a discriminatory manner do not constitute adverse actions because her employment status and duties were not affected by these actions. Nichols, 424 F. Supp. 2d at 136 (adverse employment actions do not include "'purely subjective injuries'" (quoting Holcomb, 433 F.3d at 902)). Furthermore, the legitimate, non-discriminatory explanations offered by the defendant, i.e, that the plaintiff was consistently insubordinate causing the defendant to engage in certain supervisory measures, Def.'s Mem. at 12-13, 29-32, and that there "was concern" the plaintiff had abused her sick leave privileges, id. at 32, placed the burden on the plaintiff to show that the explanations were pretextual. However, the plaintiff has failed to satisfactorily rebut the defendant's legitimate, non-discriminatory explanations; thus, the Court cannot conclude that the defendant's reasons were a pretext for discrimination. In addition, the plaintiff's only response to the sick leave issue is the bald assertion that she had "no sick leave abuse history," Am. Compl. ¶ 17, which alone is insufficient to show pretext. See Ginger, __ F.3d __, 2008 WL 2342327, at *7 ("[A] mere unsubstantiated allegation … creates no genuine issue of fact and will not withstand summary judgment.") (quoting Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993)) (internal quotation marks omitted).

---

[8]  The Mastrian allegation is not actionable because it falls outside of the 180-day period during which CAA civil claims can be filed. 2 U.S.C. § 1402(a); see Thompson v. Capitol Police Bd., 120 F. Supp. 2d 78, 82 (D.D.C. 2000) (stating that a prerequisite to filing a civil action under the CAA is that a request for counseling be made "not later than 180 days after the alleged violation") (internal quotation and citation omitted).

Accordingly, of the several allegations that the plaintiff claims amounted to adverse employment actions, only the alleged denials of promotions and the low performance ratings fall within the scope of that term.  However, as discussed previously, the plaintiff has offered no evidence to controvert the defendant's legitimate, non-discriminatory reasons for giving the plaintiff the low performance ratings.  Furthermore, as discussed below, the promotions cannot be redressed because they occurred either prior to the enactment of the CAA, are time-barred because they fall outside of the 180-day period allotted for the filing of claims under the CAA, or because the plaintiff is unable to satisfy all of the elements required to establish a prima facie case.

The Court understands the plaintiff to rely on the time-barred events and those occurring prior to the CAA's enactment as evidentiary support for her timely filed claims.  See National R.R. Passenger Corp., 536 U.S. at 103 ("discrete discriminatory acts are not actionable if time barred," but this legal restriction does not "bar an employee from using their prior acts as background evidence in support of a timely claim").  Thus, the plaintiff's "failure to promote" allegations may be used as background evidence only and therefore cannot independently provide the basis for a finding of CAA liability.  See id. at 114 ("[w]hile [the plaintiff] alleged that [she] suffered from numerous discriminatory and retaliatory acts from the date that [she] was hired through . . . the date that [she] was fired, only incidents that took place within the timely filed period are actionable").

Even if all the non-promotion claims had been timely filed, they would fail because the plaintiff has not shouldered her burden of showing that the defendant's legitimate, non-discriminatory explanations were pretexts for discrimination.  As to this deficiency, "[t]he

defendant need not persuade the court that it was actually motivated by the proffered reasons. . . .
It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it
discriminated against [the] plaintiff."   Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254
(1981).  In other words, once the defendant has met its burden of production, the burden shifts to
the plaintiff "to demonstrate that the proffered reason was not the true reason for the employment
decision[,]  . . . either directly by persuading the court that a discriminatory reason more likely
motivated the employer or indirectly by showing that the employer's proffered explanation is
unworthy of credence."   Id. at 256 (citing McDonnell Douglas, 411 U.S. at 804-05).  Moreover,
at all times "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally
discriminated against [the] plaintiff remains . . . with [the] plaintiff."   Id. at 253 (citations
omitted).

        The defendant claims that Ms. Halcomb was not promoted, as were white males in 1990,
1994, and 2001, because she was unqualified to become the Third Assistant.  Initially, the Court
observes that the plaintiff has failed to offer any evidence that she ever applied for the Gallery
positions in 1990 or 1994.  Thus, she has not established that she was unlawfully denied those
positions.  See Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004)
(requiring a plaintiff to evince that she applied for the job for which the employer was seeking
applicants to establish a prima facie case (citing McDonnell Douglas, 411 U.S. at 793)).

        While there is disagreement concerning whether the plaintiff applied for the Senior Media
Relations Coordinator ("SMRC") position in 2001, even if she had, the defendant contends that
the plaintiff lacked the necessary skills to perform the duties of the position.  Def.'s Mem. at 40.
The defendant contends that Mr. Janezich, as the selecting official, considered the person

ultimately hired to perform the SMRC responsibilities the better qualified applicant.  Id. at 23.

That person had twenty years experience in broadcast journalism, strong communication skills,

significant experience as a supervisor, substantial work experience in the technical aspects of

broadcast journalism, experience as a news producer, wrote and produced radio-program pieces,

and had a Master's Degree in Television, Radio and Films.  Id. at 23-24.  By contrast, the

defendant points out that when it was seeking to fill the 2001 SMRC position, the plaintiff did

not have a background in broadcast journalism, other than her work with the Senate, had no

supervisory or managerial experience, and had deficient writing skills.  Id. at 24.  The plaintiff

asserts that these explanations are pretextual, but she fails to explain why.

 "[A] reason cannot be proved to be 'pretext for discrimination' unless it is shown both

that the reason was false, and that discrimination was the real reason."  St. Mary's Honor Ctr. v.

Hicks, 509 U.S. 502,  515 (1993) (emphasis omitted).  To demonstrate that an employer's

articulated legitimate, non-discriminatory reasons for its decision were a pretext for

discrimination, "a plaintiff can[, for example,] attempt to show that the employer's explanation

misstates the candidate's qualifications."  Aka, 156 F.3d at 1295.  Such evidence may suffice

because a jury could infer from it that the employer's explanation is incorrect or fabricated, and

thus is proof that its decision was discriminatory.  Id.  However, it is not the Court's duty to

inquire whether the defendant's proffered reasons were the real motivation.  Burdine, 450 U.S. at

254.  It will suffice that the defendant has offered evidence that raises a genuine issue of fact.  Id.

 In this case, the plaintiff argues that her alleged weak professional skills were "largely

made up to discredit her." Pl.'s Opp'n at 13.  The plaintiff also asserts that she was unable to

advance in her career because of the discrimination to which she was subjected.  Pl.'s Opp'n at

12.  Specifically, the plaintiff claims that

> although there are (4) different "press galleries" in the U.S. Senate – she was the first
> and only African American to ever work as a employee of the Gallery.  Halcomb
> started at the lowest position, 5th Assistant, in 1987.  Prior to Halcomb's hire the
> employees of the Gallery (all white) and its manager Larry Janezich (white male) and
> the deputy director, Jane Ruyle (white female) had all started at lower positions in the
> Gallery and as they gained experience applied for and were awarded higher positions
> in the Gallery.  However after nearly16 years in the Gallery, Halcomb alleged that
> Janezich had used "prohibited unlawful" discrimination to keep her marginalized and
> unable to compete for any higher position.  After 16 years although the name of her
> position had changed from assistant to media coordinator her actual duties
> "membership accreditation" were still the same as when she began.  When higher
> positions in the Gallery were open in 1990, 1994, and 2001 Janezich always
> discouraged application and hired a white male instead.

Id.

Despite these accusations, the plaintiff has failed to establish that she was objectively the

more-qualified candidate.  She has therefore failed to rebut the defendant's legitimate, non-

discriminatory explanation for hiring someone else for the SMRC position.  Although the

plaintiff asserts that Mr. Janezich under-evaluated her experience and skills, and that she was

entitled to the SMRC position because she worked at the Gallery longer than the white male who

was ultimately hired, the record actually demonstrates that the person hired was significantly

better qualified and more experienced than the plaintiff.

Moreover, even if the plaintiff was able to establish that Mr. Janezich erroneously

assessed her qualifications and that she was actually better qualified for the position, that would

not be enough to survive summary judgment.  As Judge Bates of this Court recently observed in

Elam v. Bd of Tr. of Univ. of D.C., No. 05-1557, 2007 WL 4395530, at *13 (D.D.C. 2007)

(emphasis in original), "taken alone, the fact that the relevant decision-maker was mistaken is

unavailing. Instead, plaintiff must demonstrate that the proffered explanation was not defendant's *true* reason for denying his promotion." See also Burdine, 450 U.S. at 253 (stating that "should the defendant carry [his burden of establishing a legitimated reason for his actions] the plaintiff must then . . . [prove] . . . by a preponderance of the evidence that the legitimate reasons offered by the defendant were not [his] true reasons, but were a pretext for discrimination").

To find for the plaintiff, this Court would have to conclude that she has demonstrated that she was the superior candidate for the SMRC position, or, conversely, that the individual chosen to fill the position was clearly not qualified for the position. See Carter v. George Washington Univ., 387 F.3d 872, 880 (D.C. Cir. 2004) (noting that plaintiff failed to present "evidence from which a reasonable jury could infer" that defendant's proffered reason for hiring other candidates over plaintiff was pretextual). In making that assessment, the Court must resist any temptation to substitute its judgment for the judgment of the selecting official. Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) ("Title VII . . . does not authorize a federal court to become a 'super–personnel department that reexamines an entity's business decisions.'") (citation omitted); Fischbach v. D.C. Dep't of Corrs., 86 F.3d 1180, 1183 (1996) ("Title VII liability cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified candidates.") (citation omitted).

In the final analysis, the plaintiff has failed to establish a prima facie case of race or gender discrimination. On the one hand, she has not demonstrated that she suffered an adverse employment action as to some of the alleged acts of discrimination. On the other hand, even if she had succeeded in that endeavor, she has not refuted the defendant's legitimate, non-

discriminatory explanation for the actions challenged by the plaintiff.  Accordingly, the defendant

is entitled to summary judgment on plaintiff's race and gender discrimination claim.

b.  The Plaintiff's Retaliation Claim

To establish a prima facie case of retaliation, the plaintiff must establish that (1) she

engaged in statutorily protected activity, (2) the defendant took an adverse employment action

against her, and (3) the adverse action was causally related to the exercise of her statutorily

protected activity.  Broderick v. Donaldson, 437 F.3d 1226, 1231-32 (D.C. Cir. 2006) (citing

Smith v. District of Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005)).  The plaintiff contends that

after filing her CAA claims with the Office of Compliance in October of 2000, "particularly

since the administrative process of that Act was instituted in December of 2000," the Sergeant-at-

Arms has engaged in retaliatory actions against her.  Am. Compl. ¶ 17.

The amended complaint alleges that the plaintiff was subjected to increased supervision

of her activities and was disciplined in ways that deviated from the treatment that her co-workers

received.  Id.  Specifically, the plaintiff asserts that she was "required to submit medical

certifications for single[-]day absences," even though she had sick-leave available, had no history

of abusing her sick-leave privileges, and the requirement of verifying the need to take sick-leave

was "completely unknown to the media galleries."  Id.  Additionally, the plaintiff claims that as

an act of reprisal, the defendant refused to allow her to compete for the Senior Media

Coordinator vacancy.  Id. ¶ 19.  The plaintiff also asserts that forbidding her to eat breakfast at

her desk after 9:00 a.m. was an act of reprisal.  Pl.'s Opp'n at 7.  She further alleges that she was

subjected to continuous admonishments, threats, and harassment by Mr. Janezich.  Id.  Finally,

the plaintiff contends that Mr. Janezich's issuance of a memorandum warning her about an

24

inappropriately transmitted facsimile, advising her of an investigation concerning the facsimile, and suspending her for three days without pay on December 21, 2001, constituted acts of retaliation.  Id. at 7, 20.

The record supports the plaintiff's position that she engaged in statutorily protected activity before the challenged acts occurred.  Forkkio, 306 F.3d at 1131-32 ("filing of complaints with the EEOC [is] protected activity").  However, other than the three-day suspension and the plaintiff's low performance ratings, which disqualified her from receiving merit-based pay increases, the plaintiff has failed to establish that she was subjected to any actionable adverse employment action.  See Stewart, 275 F.3d at 1134 (noting that prima facie case for retaliation requires plaintiff to "show an action with 'materially adverse consequences affecting the terms, conditions, or privileges of employment'") (internal quotation and citation omitted); see also Blackmon-Malloy, 338 F.Supp.2d at 106 (for an action to rise to the level of an adverse employment action, the employer must cause the plaintiff to suffer "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm" (quoting Brown, 199 F.3d at 453)).

The defendant contends that the plaintiff was not subjected to an adverse employment action when Mr. Janezich circulated the December 5, 2001, memorandum to all Gallery employees forbidding them from eating breakfast at their desks after 9:00 a.m., if a spoon or fork had to be used (the "breakfast memorandum").  Def.'s Mem. at 29.  According to the defendant, Mr. Janezich felt that employees eating at their desks during business hours adversely affected the Gallery's image by visitors.  Id.  Not only can the Court not take exception with Mr.

Janezich's reasoning, but the prohibition did not amount to a retaliatory adverse employment

action.  See Broderick, 437 F.3d at 1234 ("being aggrieved is necessary to state a claim for

retaliation, . . . [and therefore an] employee must experience materially adverse consequences

affecting the terms, conditions, or privileges of employment or future employment opportunities

such that a reasonable trier of fact could find objectively tangible harm") (internal quotations and

citations omitted).  "While adverse employment actions extend beyond readily quantifiable

losses, not everything that makes an employee unhappy is an actionable adverse action.  Minor

and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like

would otherwise form the basis of a [retaliation] suit.'"  Russell v. Principi, 257 F.3d 815, 818

(D.C. Cir. 2001) (quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)).  Here, the

plaintiff has not demonstrated (or even alleged) that the breakfast prohibition had the kind of

impact that would render it actionable.  See Russell, 257 F.3d at 818 (requiring that an actionable

harm be objectively tangible so as to guard against "frivolous suits over insignificant slights").

    In January of 2002, the Senior Human Resources Administrator conducted an

investigation regarding the breakfast memorandum's transmission to the media.  Def.'s Mem. at

30.  When questioned about the matter, the plaintiff claimed not to know who disseminated the

memorandum.  Id.  Indeed, she suggested that the Deputy Sergeant-at-Arms should question the

other staff members in the effort to identify the person who distributed the memorandum.  Id.

During the investigation, the Human Resources Administrator interviewed each member of the

Gallery's staff.  Id.  The defendant claims (and the plaintiff does not dispute) that although the

plaintiff was suspected of having distributed the memorandum to the press, she was not

disciplined for its dissemination.  Id.  Thus, the plaintiff having offered no evidence showing that

the Sergeant-at-Arms' investigation into the dissemination of the breakfast memorandum affected her employment in any meaningful way, proof of an adverse employment action is lacking.  See Brown, 199 F.3d at 453 ("for a disparate treatment claim to succeed there must be 'proof that an adverse personnel action was taken'" (quoting McKenna v. Weinberger, 729 F.2d 783, 789 (D.C. Cir. 1984))).

As a result of the plaintiff's refusal to perform certain assigned tasks, she received a counseling memorandum in June 2000 and a written warning in July 2001.  Def.'s Mem. at 31.  However, neither the memorandum nor the subsequent warning constituted an adverse employment action because they did not effect the plaintiff's employment.  See Stewart, 275 F.3d at 1136 ("formal criticisms or reprimands, without additional disciplinary action such as a change in grade, salary, or other benefits do not constitute adverse employment actions"); Blackmon-Malloy, 338 F. Supp. 2d at 107 ("disciplinary warnings do not constitute adverse action").  Moreover, even if the plaintiff had established that the memorandum and warning amounted to an adverse action, she offers no evidence from which a reasonable jury could conclude, by a preponderance of the evidence, that the defendant's legitimate, non-retaliatory explanation for its actions were a pretext.  See Holbrook v. Reno, 196 F.3d 255, 263 (D.C. Cir. 1999) ("[once] the employer [] articulate[s] a legitimate, nondiscriminatory reason for the adverse action[,] . . . [t]he employee must then prove by a preponderance of the evidence that the asserted reason is a pretext for retaliation").  Thus, because the defendant has asserted that the memorandum and subsequent warning were issued in response to the plaintiff's insubordinate behavior, the plaintiff was required to show that this explanation was a pretext for retaliation, which the plaintiff has failed to do.

27

The plaintiff also argues that the defendant increased the level of her supervision and subjected her to increasing disciplinary actions because of her CAA related activities.  Am. Compl. ¶¶ 17, 19.  As proof that she was subjected to increased supervision, the plaintiff references a day in February when she was required by the defendant to submit a medical explanation for her absence from work.  Id. ¶ 17.  Once again, however, a demand for the medical excuse did not amount to an adverse employment action.  See Stewart, 275 F.3d at 1136. Moreover, the defendant asserts that the plaintiff was disciplined and subjected to increased supervision because she was persistently insubordinate.  Def.'s Mem. at 37-38.  For example, the defendant notes that the plaintiff was given the three-day suspension because she was found eating at her desk in direct violation of the breakfast memorandum.  Id. at 38-39.  The defendant also found insubordination on the part of the plaintiff from the disrespectful manner in which she spoke to her supervisor after being previously warned about her manner of speech.  Id. at 38. Additionally, the defendant represents that the plaintiff was insubordinate in regards to the memorandum that was faxed to the media.  Id.   And it was based on the totality of the plaintiff's actions that caused her supervisor to conclude that her behavior demanded disciplinary action, i.e., the three-day suspension.  Id.  Given the defendant's legitimate, non-retaliatory explanations for its actions, the plaintiff must show that the defendant's explanations are mere pretext for its alleged retaliatory actions.  The plaintiff has failed to shoulder that burden.  Indeed, she fails to offer any facts that would allow a reasonable jury to conclude, by a preponderance of evidence, that the defendant's proffered explanations are pretextual.

The plaintiff also argues that her low-performance ratings were acts of retaliation and alleges that because of these poor ratings she was ineligible to receive merit increases.  Am.

Compl. ¶¶ 4-7.  For a low-performance rating to amount to an adverse employment action the plaintiff must present evidence "such that a reasonable trier of fact could conclude that [she] has suffered objectively tangible harm" due to the poor rating.  Russell, 257 F.3d at 818-19; see Wiley v. Glassman, 511 F.3d 151, 160 (D.C. Cir. 2007) (stating "an employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm" (quoting Forkkio, 306 F.3d at 1131)); see also Weber, 494 F.3d at 185-86.  In Weber, for example, the plaintiff survived summary judgment because she presented evidence of several consecutive above-satisfactory performance evaluations for the years prior to her instigating a claim for discrimination,[9] and evidence of mediocre ratings thereafter.  494 F.3d at 185.  The performance evaluations served as a basis for performance awards, id., and because the plaintiff received awards for those years when her performance was evaluated as above-satisfactory but did not receive awards in those years when her performance was assesses as mediocre, the District of Columbia Circuit held that a genuine issue of material fact existed as to her retaliation claim.  Id. at 186.  Here, Ms. Halcomb contends that her low-performance ratings were retaliatory acts that disqualified her from merit increases but, unlike the plaintiff in Weber, she fails to present any evidence in support of this contention.  Moreover, even if her unfavorable ratings constituted adverse employment actions, the plaintiff has failed to rebut the defendant's legitimate, non-discriminatory reasons for the

---

[9]  The plaintiff filed an action alleging several incidents of discrimination, including: failure to promote, reassignment of duties and lack of access to information and employees. Weber, 494 F.3d at 180.

ratings she received.  See Janezich Decl. at 2 (stating the plaintiff received low performance

ratings due to the need to improve written her communication and organizational skills).

The plaintiff further argues that Mr. Janezich retaliated against her by admonishing,

threatening and harassing her.  Am. Compl. ¶ 17.  However, again the plaintiff fails to show that

she suffered a "demonstrably adverse employment consequence" from these alleged retaliatory

acts.  Brown, 199 F.3d at 453 (noting that employee must offer proof of adverse personnel action);

see, e.g., Hunter v. Ark Rests. Corp., 3 F. Supp. 2d 9, 20 (D.D.C. 1998) (finding lack of prima

facie case because plaintiff did not demonstrate adverse consequences of scolding by supervisors).

Finally, the plaintiff argues that she was the victim of retaliation when she was not

awarded the SMRC position.  Pl.'s Opp'n at 19.  Clearly, a failure to promote amounts to an

adverse employment action.  Stewart, 275 F.3d at 1134-35 ("tangible employment action

constitutes a significant change in employment status, such as . . . failing to promote" (citing

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998))).  To establish a claim based on a

failure to promote, a plaintiff must satisfy two additional requirements in order to make out a

prima facie case: that she applied and was qualified for an available position.  See Cones v.

Shalala,199 F.3d 512, 517-18 (D.C. Cir. 2000) (discussing the prima facie elements of application

and qualification); Blackmon-Malloy, 338 F. Supp. 2d at 111 (citing Cones).

In the plaintiff's Amended Complaint, she states that on January 5, 2001, a vacancy for a

"Senior Media Coordinator" position was announced.  Am Compl. ¶ 15.  According to the

requirements listed in the initial job announcement, the plaintiff contends that she was qualified for

the position.  Id.  However, sometime later, Mr. Janezich allegedly altered the requirements for the

position to include a degree in electronic engineering, which the plaintiff did not possess.  Id.

Despite this alteration, the plaintiff applied for the SMRC position, but a white male was hired to fill the vacancy.  Id. ¶ 16.  Although the plaintiff applied for the position and therefore satisfied the first additional requirement of a non-promotion claim, she was not qualified for the position because she lacked a degree in engineering.  And, once the defendant met his burden of providing a legitimate, non-retaliatory explanation for the plaintiff's non-selection, the burden then shifted back to the plaintiff "to demonstrate that the proffered reason was not the true reason for the employment decision[,]  . . . either directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Burdine, 450 U.S. at 256 (citing McDonnell Douglas, 411 U.S. at 804-05).  And, as noted earlier, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains . . . with the plaintiff."  Id. at 253 (citations omitted).

Thus, absent any showing that the degree requirement was added as a pretext for the sole purpose of denying the plaintiff the opportunity to acquire the position, the plaintiff has failed to satisfy a critical element needed for a prima facie case of retaliation. See Burdine, 450 U.S. at 254 (after a plaintiff has established a prima facie case, the burden then shifts to the defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. . . . [t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . [i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff"); see also Cones, 199 F.3d at 520-21.  Although the plaintiff argues that the defendant only altered the requirements for the SMRC vacancy so that it could prevent her from qualifying

for the position, she has offered no proof to support this argument.  Without such proof, the

plaintiff has failed to satisfy her burden of proving that the defendant's claim that she was

unqualified for the position was a pretext.

### VI.  Conclusion

For the foregoing reasons, the defendant's motion to dismiss on jurisdictional grounds is

denied.  However, the defendant's motion for summary judgment must be granted either because

the plaintiff has failed to demonstrate that she was the victim of an adverse employment action as

to some of the defendant's actions she challenges, or because she has failed to rebut the

defendant's legitimate, non-discriminatory reasons proffered in support of some of the actions

taken by the defendant.  Accordingly, the plaintiff's complaint must be dismissed in its entirety.

**SO ORDERED** on this 2nd day of July, 2008.[10] [11]


REGGIE B. WALTON
United States District Judge

---

[10] This memorandum opinion accompanies the order granting the defendant's Motion for Summary Judgement entered on March 28, 2008.

[11] As a result of the Court granting Defendant's Motion to Dismiss and/or for Summary Judgment, the plaintiff's Motion in Limine and her Motion for a Status Conference are dismissed as moot.